UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                    :
**JEROME BELLAMY,**                                 :
                                                    :       USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
                                                            DOC #:
                                                            DATE FILED: 8/5/08

                                                            **OPINION AND ORDER**

     **Plaintiff,**                           :

                                                            **07 Civ. 1801 (SAS)**

     – against –                             :
                                                    :
**MOUNT VERNON HOSPITAL, in its**                   :
**official and individual capacity,**               :
**DR. MARC JANIS, in his**                          :
**official and individual capacity, NEW**           :
**YORK STATE DEPARTMENT OF**                        :
**CORRECTIONAL SERVICES,**                          :
**DR. LESTER WRIGHT, in his official**              :
**and individual capacity, and DR. J.**             :
**PERELI, in his official and individual**          :
**capacity,**                                       :
                                                    :
     **Defendants.**                           :
-------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Jerome Bellamy, proceeding pro se, brings this action alleging

violations of his Eighth Amendment right to be free from cruel and unusual

punishment and his Fourteenth Amendment right to the information that a

reasonable patient would deem necessary to make an informed decision regarding

medical treatment.  These violations allegedly resulted from deliberate

indifference to Bellamy's serious medical needs and the failure to provide him

with medical information in connection with an allegedly unnecessary epididymectomy[1] performed on August 3, 2004.[2] He also alleges violations of the Americans with Disabilities Act of 1990 ("ADA")[3] and the Rehabilitation Act of 1973 ("RHA")[4] for failure to provide him with adequate medical care because he is HIV positive.

Dr. Marc Janis now moves to dismiss the case for failure to meet the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"),[5] or, in the alternative, for summary judgment. Mount Vernon Hospital ("Mt. Vernon") also moves for summary judgment. For the reasons set forth below, Dr. Janis's motion to dismiss is denied and summary judgment is granted to both Dr. Janis and Mt. Vernon on all claims.

## II. BACKGROUND

---

[1] An epididymectomy is defined as the surgical removal of the epididymis (the cord-like structure along the posterior border of the testicle). The epididymis is essential to the male reproductive system. *See* Dorland's Illustrated Medical Dictionary 639, 1342, 1770 (31st ed. 2007).

[2] *See* 3/6/08 Deposition Testimony of Jerome Bellamy ("Bellamy Dep.") at 114:23-115:6, Ex. C to Declaration of Julinda Dawkins, counsel to defendant Dr. Janis ("Dawkins Decl.").

[3] 42 U.S.C. § 12132 *et seq*.

[4] 29 U.S.C. § 794 *et seq*.

[5] 42 U.S.C. § 1997e.

## A. Procedural History

Bellamy never filed a grievance with the New York State Department

of Correctional Services ("DOCS") regarding the epididymectomy which gives

rise to his claims against Dr. Janis and Mt. Vernon. He asserts that he never filed

a grievance because he believed that he was time barred from doing so. Bellamy

believed that DOCS regulations gave him a maximum of forty-five days from the

date of the surgery in which to file a grievance. Bellamy was not aware of the

medical conditions which allegedly resulted from his epididymectomy until after

this forty-five day period expired.[6] This action was filed on March 2, 2007.

## B. Facts[7]

### 1. Parties

Bellamy is an HIV positive male incarcerated at Sing Sing

Correctional Facility ("Sing Sing") in Ossining, New York.[8] Mt. Vernon provided

---

[6]     Reply Memorandum of Law in Support of Plaintiff's Motion Against Summary Judgment ("Pl. Mem.") at 11.

[7]     This section includes only those facts relevant to the motions brought by Dr. Janis and Mt. Vernon.

[8]     *See* Bellamy Dep. at 80:18-23, 177:4; 7/3/02 NYSDOCS Request and Report or Consultation, Ex. I to Declaration of Lynne S. Beccardo, counsel to Mt. Vernon ("Beccardo Decl.").

3

the surgical space in which Bellamy underwent an epididymectomy.[9] Dr. Janis

performed the surgery. Dr. Janis is a physician licensed by the State of New York

in Urology and is currently on staff at several hospitals, including Mt. Vernon. At

the time of the surgery, Dr. Janis was contractually obligated to provide urological

care to the inmates at Sing Sing.[10]

## 2. Bellamy's Surgery

In 2001, Bellamy began complaining to DOCS medical personnel of

pain and small lumps on his left testicle.[11] Bellamy's condition was unresponsive

to non-surgical treatment.[12] The pain and the size of the lumps increased

continually and a left epididymectomy was recommended by Dr. J. Pereli

---

[9]     *See* Defendant Mt. Vernon's Rule 56.1 Statement of Facts ¶ 7.

[10]     *See* Defendant Dr. Janis's Rule 56.1 Statement of Facts ¶¶ 2-3.

[11]     *See* Bellamy Dep. at 90:10, 93:11-13.

[12]     Although Bellamy's pain was manageable with medication, his
underlying condition was unresponsive to, and continued to worsen, despite the
use of antibiotics, scrotal support, and sitz baths (warm baths to soak the testicles).
*See* 4/21/08 Affidavit of Dr. Marc Janis and Supporting Documents in Support of
Motion for Summary Judgment ("Janis Aff."), Ex. D to Dawkins Decl., ¶¶ 8-10;
4/30/03 NYDOCS Request and Report of Consultation, Ex. A to Janis Aff.;
4/14/04 NYDOCS Request and Report of Consultation, Ex. A to Janis Aff.;
Bellamy Dep. at 103:13-104:15, 107:19-23, 113:7-19, 114:23-117:20.

4

sometime in late 2002 or early 2003.[13] Dr. Janis concurred with the recommendation on April 14, 2004.[14] Initially, Bellamy declined to have the surgery and it was not performed by Dr. Janis until August 3, 2004.[15]

Bellamy testified that the risks of an epididymectomy were never explained to him prior to the surgery.[16] However, he also testified that he was informed that the surgery consisted of draining a cyst[17] and that Dr. Janis brought up "something about if I had kids . . . [and] explained that you got two testicles so if one malfunctioned, the other one would take up the slack for what the other one couldn't do."[18] Although Bellamy signed a consent form which states that he fully understood the nature and risks of the surgery, he claims that he was rushed into

---

[13]     Dr. Pereli is a DOCS physician who is on staff at Sing Sing. *See* Bellamy Dep. at 103:13-104:15, 107:19-23, 113:7-19, 114:23-117:20.

[14]     *See* Bellamy Dep. at 103:13-104:15, 107:19-23, 113:7-19, 114:23-117:20; Janis Aff. ¶ 10; 4/14/04 NYDOCS Request and Report of Consultation, Ex. A to Janis Aff.

[15]     *See* Bellamy Dep. at 114:23-115:6; 1/30/07 NYDOCS Request and Report of Consultation, Ex. A to Janis Aff.

[16]     *See* Bellamy Dep. at 124:6-10.

[17]     *See id.* at 120:12-19, 127:20-25.

[18]     *Id.* at 124:23-24, 125:18-126:20.

5

signing the form without being given the opportunity to read it first.[19]

After the surgery, Bellamy developed hypogonadism (a deficiency in the hormone testosterone) as well as a deficiency in the hormone cortisol.[20] Bellamy testified that numerous medical professionals have told him that his epididymectomy is responsible for these conditions, but has offered no support for this conclusory allegation.[21] Dr. Harish Moorjani, one of the doctors who allegedly told Bellamy about the link between his hypogonadism and the epididymectomy, has submitted an affidavit denying that he ever made such a statement to Bellamy.[22] Bellamy also testified, and Dr. Moorjani stated in his affidavit, that HIV is a known cause of hypogonadism.[23] Bellamy's hormone levels tested normal prior to the epididymectomy and Bellamy testified that he never experienced erectile dysfunction prior to the surgery.[24] Bellamy suffered

---

[19]    *See id.* at 131:2-25, 137:20-139:7.

[20]    *See id.* at 151:6-21, 160:7-15, 167:21-168:5.

[21]    *See id.* at 180:6-10, 181:12-182:6.

[22]    *See id.* at 180:20-181:19; Affidavit of Dr. Harish Moorjani and Supporting Documents in Support of Motion for Summary Judgment ("Moorjani Aff."), Ex. E to Dawkins Decl., ¶ 6.

[23]    *See* Bellamy Dep. at 214:7-13; Moorjani Aff. ¶ 5.

[24]    *See* Bellamy Dep. at 113:7-13, 245; 6/30/04 NYDOCS Request and Report of Consultation, Ex. A to Moorjani Aff.

6

from weight loss and loss of appetite prior to the surgery.[25]

## C. Bellamy's Claims

Bellamy claims that the epididymectomy is responsible for his

hypogonadism and cortisol deficiency, and that these conditions have caused him

to suffer dramatic weight loss, loss of appetite, erectile dysfunction, inability to

ejaculate, and potential infertility.[26] Bellamy also claims that Dr. Janis did not

properly research the effects of an epididymectomy on an HIV positive patient and

that Dr. Janis could have drained the fluid in his epididymis instead of removing a

portion of it.[27] Bellamy further claims that Dr. Janis deliberately chose an inferior

method of treating his condition and that Bellamy's HIV positive status played a

role in Dr. Janis's decision to provide him with inferior care.[28] Bellamy also

claims that Dr. Janis purposely failed to fully discuss and disclose all the possible

risks of the surgery, in particular the possible effects on his hormone levels and the

reproductive capability of his left testicle. Had this information been available,

---

[25]     *See* Bellamy Dep. at 113:7-13, 245; 3/30/04 NYDOCS Request and Report of Consultation, Ex. A to Moorjani Aff. (noting continued weight loss); 6/30/04 NYDOCS Request and Report of Consultation, Ex. A to Moorjani Aff. (noting poor appetite).

[26]     *See* Bellamy Dep. at 163:15-21, 167:21-169:14.

[27]     *See id.* at 178:13-179:15; Amended Complaint ("Am. Compl.") ¶ 5.

[28]     *See* Plaintiff's Statement of Facts (Pl. Facts) ¶ 3; Am. Compl. ¶ 15.

7

Bellamy claims he would not have undergone the surgery.[29] Bellamy is bringing

claims under the Eighth Amendment for deliberate indifference to his medical

needs, the Fourteenth Amendment for deliberately withholding medical

information from him, and the ADA and the RHA for providing him with inferior

medical treatment because he is HIV positive.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of

law."[30] An issue of fact is genuine "'if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'"[31] A fact is material when it

"'might affect the outcome of the suit under the governing law.'"[32] "It is the

---

[29]    *See* Pl. Facts ¶¶ 3, 5.

[30]    Fed. R. Civ. P. 56(c).

[31]    *Ricci v. Destefano*, — F.3d —, No. 06 Civ. 4996, 2008 WL 2404956, at *19 (2d Cir. June 12, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[32]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

movant's burden to show that no genuine factual dispute exists."[33]

In turn, to defeat a motion for summary judgment, the non-moving

party must raise a genuine issue of material fact. To do so, it must do more than

show that there is "'some metaphysical doubt as to the material facts,'"[34] and it

"'may not rely on conclusory allegations or unsubstantiated speculation.'"[35]

However, "'all that is required [from the non-moving party] is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or

judge to resolve the parties' differing versions of the truth at trial.'"[36]

> Where the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim. In that event, the non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.[37]

[33]   *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[34]   *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[35]   *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[36]   *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[37]   *Rodriguez v. City of New York*, 535 F. Supp. 2d 436, 440 (S.D.N.Y. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin Atl.*

In determining whether a genuine issue of material fact exists, the

court must construe the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in that party's favor.[38] However, "[i]t is a

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[39] Summary judgment is therefore

inappropriate "'if there is any evidence in the record that could reasonably support

a jury's verdict for the non-moving party.'"[40]

Further, where the plaintiff is proceeding pro se, her pleadings must

be considered under a more lenient standard than that accorded to "formal

pleadings drafted by lawyers,"[41] and her pleadings must be "interpret[ed] . . . to

*Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001)).

[38]     *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d
450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305,
312 (2d Cir. 1997)).

[39]     *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50,
55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[40]     *American Home Assurance Co. v. Hapag Lloyd Container Linie,
GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v.
Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

[41]     *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). *Accord
Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

10

raise the strongest arguments they suggest."[42] However, a pro se plaintiff must

still meet the usual requirements of summary judgment.[43] Thus, a pro se plaintiff's

"failure to allege either specific facts or particular laws that have been violated

renders her attempt to oppose defendants' motion [for summary judgment]

ineffectual."[44]

## IV. APPLICABLE LAW

### A. Exhaustion of Administrative Remedies

The PLRA mandates that a prisoner exhaust all administrative

remedies before bringing an action regarding prison conditions.[45] Failure to

exhaust is an absolute bar to an inmate's action in federal court: "[section]

---

[42]     *Burgos*, 14 F.3d at 790.

[43]     *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4470, 2004
WL 2008848, at *4 (S.D.N.Y. Sept. 8, 2004) ("'Proceeding pro se does not
otherwise relieve a litigant from the usual requirements of summary judgment, and
a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to
overcome a motion for summary judgment.'") (quoting *Cole v. Artuz*, No. 93 Civ.
5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)).

[44]     *Kadosh v. TRW*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y.
Dec. 5, 1994). *Accord Jermosen v. Mann*, 18 Fed. App'x 31 (2d Cir. 2001).

[45]     *See* 42 U.S.C. § 1997e(a) (providing that: "No action shall be brought
with respect to prison conditions under §1983 of this title, or any other Federal
law, by a prisoner confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted."). *See also Porter v.
Nussle,* 534 U.S. 516, 516 (2002); *Booth v. Churner*, 532 U.S. 732, 739 (2001)

1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[46] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time of the initial filing, given that "[s]ubsequent exhaustion after suit is filed . . . is insufficient."[47] Moreover, the exhaustion of administrative remedies must be *proper* – that is, in compliance with a prison grievance program's deadlines and other critical procedural rules – in order to suffice.[48] The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[49]

   While the Second Circuit has recognized that the PLRA's exhaustion requirement is mandatory, it has also recognized three exceptions to the exhaustion requirement:

  when (1) administrative remedies are not available to the

---

  [46] *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks and citation omitted, emphasis in original).

  [47] *Id.*

  [48] *See Woodford v. Ngo*, 548 U.S. 81, 90-92 (2006).

  [49] *Porter*, 534 U.S. at 532.

prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement.[50]

The Second Circuit has recently held that "'[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought,' . . . does not constitute proper exhaustion."[51] Further, "notice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.'"[52]

## B.    Section 1983

Section 1983 "does not create a federal right or benefit; it simply

---

[50]    *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

[51]    *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quoting *Braham v. Clancy*, 425 F.3d 177, 184 (2d Cir. 2005) and citing *Woodford*, 548 U.S. at 94-95) (finding plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to the MDC's staff").

[52]    *Id*. (quoting *Woodford*, 548 U.S. at 95).

13

provides a mechanism for enforcing a right or benefit established elsewhere."[53] In

order to state a claim under section 1983, a plaintiff must show that the conduct

complained of was committed by a person or entity acting under color of state law,

and that the conduct deprived a person of rights, privileges, or immunities secured

by the Constitution.[54]

Furthermore, "[i]t is well settled in this Circuit that 'personal

involvement of defendants in alleged constitutional deprivations is a prerequisite

to an award of damages under § 1983.'"[55] Thus, "[a] supervisory official cannot

be liable solely on account of the acts or omissions of his or her subordinates."[56]

However, there may be liability if:

> (1) the defendant participated directly in the alleged
> constitutional violation; (2) the defendant, after being
> informed of the violation through a report or appeal, failed
> to remedy the wrong; (3) the defendant created a policy or
> custom under which unconstitutional practices occurred, or
> allowed the continuance of such policy or custom; (4) the

---

[53]     *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*,
423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808,
816 (1985)).

[54]     *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004).

[55]     *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v.
Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

[56]     *Ford v. Conway*, No. 03-CV-0927S, 2004 WL 1071171, at *4
(W.D.N.Y. Mar. 16, 2004).

14

> defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts; or (5) the
> defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that
> unconstitutional acts were occurring.[57]

Plaintiff must allege facts sufficient to establish that defendants were personally

involved in the alleged constitutional deprivation in order to sustain a section 1983

claim.

## C. Eighth Amendment Right to be Free from Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits the infliction of cruel and unusual

punishment on prisoners. The Supreme Court has held that "deliberate

indifference to serious medical needs of prisoners constitutes the 'unnecessary and

wanton infliction of pain' . . . proscribed by the Eighth Amendment."[58] Because

the inadvertent or negligent failure to provide adequate medical care does not rise

to the level of deliberate indifference, allegations of medical malpractice or

---

[57]    *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

[58]    *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). *Accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind . . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . .") (quotation marks and citations omitted).

15

negligent treatment are insufficient to state a claim under section 1983.[59] "Prison

officials have a duty to provide prisoners with the 'reasonably necessary medical

care which would be available to him or her . . . if not incarcerated.'"[60] However,

a prison cannot be required to meet the same standard of medical care found in

outside hospitals.[61] Moreover, a prisoner has no right to the treatment of his

choice.[62]

> Disagreements over medications, diagnostic techniques
> (e.g., the need for X-rays), forms of treatment, or the need
> for specialists or the timing of their intervention, are not
> adequate grounds for a Section 1983 claim. These issues
> implicate medical judgments and, at worst, negligence
> amounting to medical malpractice, but not the Eighth
> Amendment.[63]

---

[59]   *See Estelle*, 429 U.S. at 105-06.

[60]   *Candeleria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *7
(S.D.N.Y. Mar. 1, 1996) (quoting *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir.
1989)). *Accord Edmonds v. Greiner*, No. 99 Civ. 1681, 2002 WL 368446, at *8
(S.D.N.Y. Mar. 7, 2002) ("A person who is incarcerated is entitled to receive
adequate medical care.").

[61]   *See Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir. 1984).

[62]   *See McKenna v. Wright*, No. 01 Civ. 6571, 2002 WL 338375, at *7
(S.D.N.Y. Mar. 4, 2002).

[63]   *Sonds v. Saint Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d
303, 312 (S.D.N.Y. 2001) (citing *Estelle*, 429 U.S. at 97). *Accord Candelaria v.
Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *7 (S.D.N.Y. Mar. 1, 1996) ("A
difference of opinion between an inmate and medical professionals . . . as to the
appropriate course of treatment does not in and of itself constitute an Eighth

## III.  DISCUSSION

### A.  Exhaustion of Administrative Remedies

The Second Circuit has held that failure to exhaust administrative

remedies can be "justified by [a prisoner's] reasonable belief that DOCS

regulations foreclosed such recourse."[64]  The New York Rules and Regulations

state that "exception[s] to the time limit for filing a grievance [may be granted]

based on mitigating circumstances . . . . An exception to the time limit may not be

granted if the request was made more than 45 days after an alleged occurrence."[65]

Bellamy believed that the "alleged occurrence" was his surgery, not his knowledge

of the alleged side-effects of the surgery.  Accordingly, he believed that he was

time-barred from filing a grievance relating to his epididymectomy because he not

aware of his need to file a grievance until after the forty-five-day period to file a

"late grievance" had lapsed.[66]

I find Bellamy's conclusion reasonable because "alleged occurrence"

does not have a clear meaning and Bellamy's misunderstanding is not clearly

Amendment violation.").

---

[64]     *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).

[65]     7 N.Y.C.R.R. § 701.6(g)(1)(i)(a).

[66]     *See* Pl. Mem. at 11.

17

inconsistent with the language of the statute. Accordingly, Bellamy did not fail to exhaust his administrative remedies because he was justified in his belief that no administrative remedy was available to him.[67]

## B. Bellamy's Claims Against Dr. Janis

### 1. Bellamy Cannot Establish an Eighth Amendment Violation

Bellamy's assertion that Dr. Janis deliberately chose the wrong treatment is pure speculation. There is nothing in the record which shows that Dr. Janis failed to follow a medically accepted treatment protocol. Even if Dr. Janis could have chosen to drain fluid instead of performing an epididymectomy, Bellamy's claim amounts, at best, to a dispute over treatment choice or medical malpractice. Because neither of these is sufficient to maintain a "deliberate indifference" claim, summary judgement is granted to Dr. Janis on Bellamy's Eighth Amendment claim.

### 2. Plaintiff Cannot Establish a Deliberate Failure to Provide Medical Information

In order to prove a claim under the Fourteenth Amendment for failure to provide medical information, Bellamy must prove that Dr. Janis deliberately

---

[67] *See Giano*, 380 F.3d at 678 ("What is justification in the PLRA context for not following procedural requirements . . . must be determined by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way.").

withheld information from him.[68]  Bellamy claims that Dr. Janis purposefully

withheld critical information about the epididymectomy, in particular that the

surgery could affect his testosterone and cortisol levels and would disable the

reproductive function of Bellamy's left testicle.

According to Bellamy's testimony, however, Dr. Janis specifically

addressed "something about if I had kids or wanted to have kids or something like

that" and Dr. Janis also "explained that you got two testicles so if one

malfunctioned, the other one would take up the slack for what the other one

couldn't do."[69]  Even assuming that Bellamy misunderstood Dr. Janis or that Dr.

Janis did not clearly convey the possible side-effects of the surgery, such a

breakdown of doctor-patient communication does not amount to a constitutional

violation.[70]  Furthermore, aside from Bellamy's personal opinion, the record is

devoid of any evidence that the epididymectomy is the cause of Bellamy's

hormonal deficiencies.  Accordingly, summary judgment is granted to Dr. Janis on

Bellamy's claim for failure to provide medical information.

---

[68]     *See Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006).

[69]     Bellamy Dep. at 124:23-24, 126:16-19.

[70]     *See Pabon*, 459 F.3d at 251 (holding that "simple negligence will not
suffice" to establish liability under the Fourteenth Amendment for failure to
provide medical information).

## 3. ADA and RHA Claims

In order to prevail on his ADA and RHA claims against Dr. Janis,

Bellamy must show that he was "denied the opportunity to participate in or benefit

from defendant[]'s services, programs, or activities, or [was] otherwise

discriminated against."[71] The only denial or discrimination claimed by Bellamy is

inadequate medical care. He has, however, provided only his personal belief that

Dr. Janis's services were substandard. Such unsupported speculation is

insufficient to defeat Dr. Janis's motion for summary judgment. Accordingly,

summary judgment is granted to Dr. Janis on Bellmay's ADA and RHA claims.

## B. Bellamy's Claims Against Mt. Vernon

In support of his claims that Mt. Vernon was deliberately indifferent

to his medical needs and failed to provide him with medical information, Bellamy

asserts that Mt. Vernon is responsible for Dr. Janis's actions because Mt. Vernon

allowed Dr. Janis to perform the surgery on its premises and released him too

quickly after his surgery.[72] Bellamy, however, has provided no evidence to

support his opinion that his release from Mt. Vernon was premature. His assertion

---

[71]     *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). *See also* 29 U.S.C. § 794(a); 42 U.S.C. § 12132.

[72]     *See* Bellamy Dep. at 168:18-168:10.

that Mt. Vernon is responsibile for Dr. Janis's actions is, at best, a *respondeat superior* claim. Without more, Bellamy's section 1983 claims against Mt. Vernon cannot survive summary judgment.[73]

Bellamy has also failed to establish that Mt. Vernon violated the ADA or RHA. Mt. Vernon provided him with the facilities necessary for his surgery. Furthermore, Bellamy has not alleged that anyone from Mt. Vernon, aside from Dr. Janis, is responsible for any malfeasance or misfeasance in treating him. Even if Dr. Janis was acting as a representative of Mt. Vernon, Bellamy's ADA and RHA claims against him have been dismissed. Accordingly, summary judgment is granted to Mt. Vernon on all claims.

## V. CONCLUSION

For the foregoing reasons, Dr. Janis's motion to dismiss for failure to exhaust administrative remedies is denied and summary judgment is granted to Dr. Janis and Mt. Vernon on all claims. The Clerk of the Court is directed to close the following motions: Dr. Janis's motion for summary judgment [docket no. 35]; Mt. Vernon's motion for summary judgment [consisting of docket nos. 30-33]; and plaintiff's motion in opposition to defendants' motions for summary judgment [docket no. 44]. A conference with Dr. Lester Wright, the remaining defendant, is

---

[73]     *See Colon*, 58 F.3d at 873.

21

scheduled for August 27, 2008, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              August 5, 2008

**-Appearances-**

**Plaintiff (Pro Se):**

Jerome Bellamy
DIN #95-A-3879
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

**For Defendant Dr. Marc Janis:**

Julinda Dawkins
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8118

**For Defendant Mount Vernon Hospital:**

Lynne S. Beccaro, Esq.
Bartlett McDonough Bastone & Monaghan LLP
81 Main Street
White Plains, NY 10601
(914) 448-0200