UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

JEROME BELLAMY,

                Plaintiff,

   - against -

MOUNT VERNON HOSPITAL, in its
official and individual capacity, DR. MARC
JANIS, in his official and individual capacity,
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, DR.
LESTER WRIGHT, in his official and
individual capacity, and DR. J. PERELI, in
his official and individual capacity,

                Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

**07 Civ. 1801 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/26/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      Jerome Bellamy, presently incarcerated and proceeding pro se, alleges

that the New York State Department of Correctional Services ("DOCS") and Dr.

Lester Wright, the remaining defendants in this case[1], violated Bellamy's

---

[1]    The original and amended complaints were also filed against Mount
Vernon Hospital, Dr. Mark Janis, Dr. J. Pereli, in their individual and official
capacities.  The claims against Mount Vernon Hospital and Dr. Mark Janis were
dismissed in *Bellamy I* and the claim against Dr. J. Pereli was dismissed in a

constitutional rights. His claims surround denials of requested testosterone treatment by Wright, a doctor and supervisory official for the DOCS. Wright and the DOCS now move for summary judgment. For the reasons stated below, their motion for summary judgment is granted in its entirety.

## II.   BACKGROUND[2]

### A.   Facts

#### 1.   Parties

Bellamy is presently in the custody of the DOCS at the Wende Correctional Facility in Alden, New York.[3] The DOCS is a state agency responsible for the care, custody and control of inmates convicted of crimes under New York State laws.[4] Wright is both a New York-licensed medical doctor and the Deputy Commissioner and Chief Medical Officer ("CMO") of the DOCS.[5] As

---

subsequent order issued by this Court on January 15, 2009. Wright and the DOCS are the only remaining defendants.

[2]     For more detailed background, see *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2008 WL 3152963 (S.D.N.Y. Aug. 5, 2008) ("*Bellamy I*"). Some of the facts recounted here are drawn from the prior opinion.

[3]     *See* Defendants' Rule 56.1 Statement of Facts ¶ 1.

[4]     *See id.* ¶ 2.

[5]     *See id.* ¶ 3.

CMO, he is responsible for the development and operation of a system to provide

necessary medical care for inmates in the custody of the DOCS.[6]

## 2.    Bellamy's Surgery

In August 2004, while in DOCS custody at Sing Sing Correctional

Facility in Ossining, New York, Bellamy underwent an epididymectomy.[7]

Bellamy was HIV positive at the time of his surgery.[8]  Around that time, Bellamy

developed hypogonadism (a deficiency in the hormone testosterone) as well as a

deficiency in the hormone cortisol.[9]  As a result of these conditions, Bellamy was

prescribed various medications, including a testosterone patch called

---

[6]    *See id.*

[7]    *See Bellamy I*, 2008 WL 3152963, at *1.  An epididymectomy is
defined as the surgical removal of the epididymis (the cord-like structure along the
posterior border of the testicle).  The epididymis is essential to the male
reproductive system.  *See* Dorland's Illustrated Medical Dictionary 639, 1342,
1770 (31st ed. 2007).

[8]    *See* 3/6/08 Deposition Testimony of Jerome Bellamy ("Bellamy Dep.
I") at 139:15-17 (where Bellamy says that, prior to the surgery, he was on HIV
medication).

[9]    See *Bellamy I*, 2008 WL 3152963, at *2.  These conditions had many
side effects, including sexual maladies and dramatic weight loss. *See id.*  While
Bellamy contends that the surgery caused the hypogonadism, his treating doctor
claims "with a reasonable degree of medical certainty" that the hypogonadism
preceded the surgery. *See* 4/22/08 Affidavit of Dr. Harish Moorjani ("Moorjani
Aff."), Ex. J to 6/5/09 Supplemental Declaration of Julinda Dawkins, counsel to
defendants, ¶ 4.

"Androderm."[10] Bellamy contends that without testosterone treatment, he suffers from mood swings, fatigue, nausea, headaches, and lack of appetite.[11] However, he also experiences similar symptoms even with medication.[12]

### 3. Bellamy's Letters to Wright

Following the surgery, Bellamy wrote to Wright on three pertinent occasions. In the first letter, Bellamy provided background into his ailments and asked Wright to provide him with a hormone treatment (Androgel) which had been provided at a previous facility.[13] The second letter asked Wright to force Dr.

---

[10]   *See, e.g.*, Amended Complaint ("Am. Compl."), Statement of Facts ¶¶ 5, 7. Androgel is a similar medication. The Amended Complaint is divided into various parts with overlapping paragraph and page numbers. As a result, references to the Amended Complaint are made by noting first the relevant topic header and then the cited or quoted paragraph number.

[11]   *See* 1/12/09 Deposition Testimony of Jerome Bellamy ("Bellamy Dep. II") at 35:23-24. Bellamy's hypogonadism may have been caused by his HIV. Bellamy complained of similar symptoms before the surgery and, therefore, before any alleged denial of Androgel or similar medications. *See* Moorjani Aff. ¶¶ 4-5.

[12]   *See* Bellamy Dep. II at 43:21-24 (where Bellamy admits that some of his symptoms resumed even after using the testosterone patch). *See also* Am. Compl., Statement of Facts ¶ 7 ("[T]his treatment [, Androderm,] still has not proven to be effective in keeping my hormone levels elevated, even after the dosages were increased, and my levels rise high at times then suddenly drops real low.").

[13]   *See* Defendants' Rule 56.1 Statement of Facts ¶ 9. *See also* 7/5/05 Grievance Letter from Bellamy to Wright, Ex. D to 3/30/09 Declaration of Julinda Dawkins, counsel to defendants ("Dawkins Decl.").

4

Gennovese at the Shawangunk facility to provide him with Ensure – a nutritional supplement which had been provided at a previous facility.[14] Bellamy's third letter to Wright concerned several matters.[15] In particular, Bellamy claimed, *first,* that a female officer entered his cell and retrieved his HIV medication, *second,* that an officer eavesdropped on a medical consultation with his doctor, and, *third*, that he went four days without HIV medication, five days without cortisol treatment, and six days without testosterone treatment, all while undergoing a mental health evaluation.[16]

Wright's office routinely receives hundreds of letters each year, addressed to him personally from inmates throughout the DOCS system and from individuals writing on behalf of inmates.[17] These letters are screened by staff, who then forward them to the appropriate division or bureau within the DOCS with an instruction to respond or with a notation indicating the appropriate action.[18]

---

[14]   *See* Defendants' Rule 56.1 Statement of Facts ¶ 10. *See also* 1/22/07 Grievance Letter from Bellamy to Wright, Ex. E to Dawkins Decl.

[15]   *See* Defendants' Rule 56.1 Statement of Facts ¶ 11. *See also* 6/5/07 Grievance Letter from Bellamy to Wright, Ex. F to Dawkins Decl.

[16]   *See* 6/5/07 Grievance Letter from Bellamy to Wright, Ex. F to Dawkins Decl.

[17]   *See* Defendants' Rule 56.1 Statement of Facts ¶ 12.

[18]   *See id.*

5

Wright never sees the actual letters or their responses.[19]  Inmate letters concerning

medical care – such as Bellamy's – are forwarded to the Regional Health Services

Administrator or the Regional Medical Director, as appropriate, that oversees the

facility housing the inmate.[20]  The concerns are then investigated and addressed by

the regional staff.[21]

        All three of Bellamy's letters received responses.  Holly A. Collet, the

Facility Health Services Administrator at Elmira Correctional Facility, responded

to Bellamy's July 5, 2005 letter.[22]  Pedro Diaz, the Regional Health Services

Administrator at Shawangunk Correctional Facility, responded to Bellamy's

January 22, 2007 letter.[23]  Pedro Diaz, also the Regional Health Services

Administrator at Sing Sing Correctional Facility, responded to Bellamy's June 5,

2007 letter.[24]  Wright and Bellamy have never met each other, nor have they had

---

[19]     *See id.* ¶ 13.

[20]     *See id.* ¶ 14.

[21]     *See id.*

[22]     *See id.* ¶ 15.

[23]     *See id.*

[24]     *See id.*

any other personal contact.[25]  Bellamy admits that he has no evidence that Wright

was involved in the responses to any of the three letters.[26]

### 4.    Bellamy's Claims[27]

Bellamy admits that he has no evidence that Wright denied him

testosterone replacement treatment.[28]  Nonetheless, Bellamy claims that Wright

"was responsible for denying plaintiff's testosterone treatment on different

occasions" and "was also made aware of plaintiff's complaints, but failed to abate

further injury to the plaintiff."[29]  Bellamy charges the DOCS because he was in its

---

[25]     *See id.* ¶ 16.  *See also* 3/27/09 Affidavit of Dr. Lester N. Wright
("Wright Aff."), Ex. G to Dawkins Decl., ¶ 9; Bellamy Dep. II at 20:23-25.

[26]     *See* Bellamy Dep. II at 26:17-20.

[27]     In addition to the claims listed here, Bellamy originally charged both
the DOCS and Wright with violations of the Americans with Disabilities Act of
1990 (the "ADA") and the Rehabilitation Act of 1973 (the "RHA").  *See* Am.
Compl., Legal Claims ¶ 15.  However, Bellamy later conceded that "Plaintiff['s]
Americans With Disabilities Act and Rehabilitation [Act] fails because those
statutes are not applicable here at this junction."  Plaintiff's Reply to Defendants'
Summary Judgment ("Bellamy's Reply") at 7.  This Court interprets Bellamy's
Reply as a withdrawal of his ADA and RHA claims against the remaining
defendants.

[28]     *See* Bellamy Dep. II at 33:14 to 34:15 (Question: "Do you have any
kind of evidence that Dr. Wright denied you testosterone treatment?"  Answer:
"Directly, no.").

[29]     *See* Am. Compl., Defendants ¶ 6.

custody when his claims arose.[30]  Bellamy specifically alleges that Wright – acting

under color of state law – displayed "deliberate indifference to plaintiff's serious

medical needs and violated plaintiff's rights and constituted cruel and unusual

punishment under the Eight[h] Amendment of the United States Constitution."[31]

A similar claim is lodged against the DOCS.[32]  Bellamy also seeks a preliminary

and permanent injunction against the DOCS to provide the medical treatment he

---

[30]   *See id.*  Many of the claims that allegedly occurred under DOCS
supervision have since been dismissed.

[31]   *See id.*, Legal Claims ¶ 13.  Bellamy brings his claims pursuant to
section 1983 of Title 42 of the United States Code ("section 1983").

[32]   *See id.*, Legal Claims ¶ 14 (repeating the same claim but omitting the
phrase that the DOCS "violate[d] plaintiff's rights").

requests and to comply with various New York State laws.[33] Finally, Bellamy
seeks compensatory and punitive damages.[34]

## B. Procedural History

Bellamy's first Complaint was filed on March 2, 2007, and an
Amended Complaint followed on July 16, 2007. On August 5, 2008, this Court
granted summary judgment to defendants Dr. Janis and Mount Vernon. The
DOCS had not been properly served at that point, but it was subsequently served
on August 7, 2008. Dr. J. Pereli was dismissed as a defendant on January 15,
2009, for lack of timely service of process.

---

[33]     *See id.*, Legal Claims ¶ 18. Bellamy's original Complaint only
requested injunctive relief against the DOCS. However, he later asked for
injunctive relief against Wright. *See* Bellamy's Reply at 1. Because Bellamy is
proceeding pro se, the *factual* allegations in his Reply Memoranda are treated as if
they were raised in his Complaints. *See Gill v. Mooney*, 824 F.2d 192, 195 (2d
Cir. 1987) (considering a pro se plaintiff's affidavit in opposition to defendant's
motion to dismiss in reviewing district court's dismissal of claim). However, it
would be improper to allow a plaintiff, even one proceeding pro se, to add a
defendant to a claim he had raised more than a year earlier. Thus, Bellamy's claim
for injunctive relief against Wright is dismissed. *See Polanco v. City of New York
Dep't of Corr.*, No. 01 Civ. 759, 2002 WL 272401, at *3 (S.D.N.Y. Feb. 26, 2002)
("It is well established that a plaintiff may not amend his pleading through papers
offered in opposition to a motion to dismiss . . . Plaintiff is bound by the
allegations of his Amended Complaint.") (citations omitted).

[34]     *See* Am. Compl., Legal Claims ¶¶ 19-21.

9

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."[35]  An issue of fact is genuine "'if

the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"[36]  A fact is material when it "'might affect the outcome of the

suit under the governing law.'"[37]  "It is the movant's burden to show that no

genuine factual dispute exists."[38]

In turn, to defeat a motion for summary judgment, the non-moving

party must raise a genuine issue of material fact.[39]  "Summary judgment is

properly granted when the non-moving party 'fails to make a showing sufficient to

---

[35]      Fed. R. Civ. P. 56(c).

[36]      *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008) (quoting
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[37]      *Ricci v. DeStefano*, 530 F.3d 88, 109 (2d Cir. 2008) (quoting
*Anderson*, 477 U.S. at 248).

[38]      *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244
(2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[39]      Fed. R. Civ. P. 56(c).

establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial.'"[40]  To do so, the non-moving party

must do more than show that there is "'some metaphysical doubt as to the material

facts,'"[41] and it "'may not rely on conclusory allegations or unsubstantiated

speculation.'"[42]  However, "'all that is required [from a non-moving party] is that

sufficient evidence supporting the claimed factual dispute be shown to require a

jury or judge to resolve the parties' differing versions of the truth at trial.'"[43]

      In determining whether a genuine issue of material fact exists, the

court must construe the evidence in the light most favorable to the non-moving

---

[40]    *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord In re September 11
Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4 (S.D.N.Y. Aug. 15, 2007) ("Where
the nonmoving party bears the burden of proof at trial, the burden on the moving
party may be discharged by showing – that is, pointing out to the district court –
that there is an absence of evidence to support the nonmoving party's case.")
(quotation omitted).

[41]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting
*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[42]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)
(quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[43]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199,
206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

11

party and draw all justifiable inferences in that party's favor.[44]  However, "[i]t is a

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[45]  Summary judgment is therefore "only

appropriate when there is no genuine issue as to any material fact, making

judgment appropriate as a matter of law."[46]

Further, where the plaintiff is proceeding pro se, his or her pleadings

must be considered under a more lenient standard than that accorded to "formal

pleadings drafted by lawyers,"[47] and his or her pleadings must be "interpret[ed] . . .

to raise the strongest arguments they suggest."[48]  However, a pro se plaintiff must

---

[44]    *See Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008)
(quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

[45]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl
v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[46]    *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) (citing *Tocker v.
Philip Morris Cos.*, 470 F.3d 481, 486-87 (2d Cir. 2006)).

[47]    *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  *Accord
Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [plaintiff] is a pro
se litigant, we read his supporting papers liberally.").

[48]    *Burgos*, 14 F.3d at 790.

still meet the usual requirements of summary judgment.[49]  Thus, a pro se plaintiff's

"failure to allege either specific facts or particular laws that have been violated

renders [his or] her attempt to oppose defendants' motion [for summary judgment]

ineffectual."[50]

### B.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (the "PLRA")  mandates that a

prisoner exhaust all administrative remedies before bringing an action regarding

prison conditions.[51]  Failure to exhaust is an absolute bar to an inmate's action in

federal court: "[section] 1997e(a) requires exhaustion of available administrative

---

[49]     *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4470, 2004
WL 2008848, at *4 (S.D.N.Y. Sept. 8, 2004).  ("'Proceeding pro se does not
otherwise relieve a litigant from the usual requirements of summary judgment, and
a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to
overcome a motion for summary judgment.'") (quoting *Cole v. Artuz*, No. 93 Civ.
5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)).

[50]     *Kadosh v. TRW*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y.
Dec. 5, 1994).

[51]     *See* 42 U.S.C. § 1997e(a) (providing that: "No action shall be brought
with respect to prison conditions under § 1983 of this title, or any other Federal
law, by a prisoner confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted.") ("section 1997").
*See also Porter v. Nussle*, 534 U.S. 516, 516 (2002); *Booth v. Churner*, 532 U.S.
732, 739 (2001).

remedies *before* inmate-plaintiffs may bring their federal claims to court at all."[52]
Because the plain language of section 1997e(a) states "no action shall be brought,"
an inmate must have exhausted his claims at the time of the initial filing, given
that "[s]ubsequent exhaustion after suit is filed . . . is insufficient."[53]  Moreover,
the exhaustion of administrative remedies must be proper — that is, in compliance
with a prison grievance program's deadlines and other critical procedural rules —
in order to suffice.[54]  The Supreme Court has held that "the PLRA's exhaustion
requirement applies to all inmate suits about prison life, whether they involve
general circumstances or particular episodes, and whether they allege excessive
force or some other wrong."[55]

   While the Second Circuit has recognized that the PLRA's exhaustion
requirement is mandatory, it has also recognized three exceptions to the
exhaustion requirement:

> when (1) administrative remedies are not available to the
> prisoner; (2) defendants have either waived the defense of
> failure to exhaust or acted in such a way as to estop them

---

[52] *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks
and citation omitted, emphasis in original).

[53] *Id.*

[54] *See Woodford v. Ngo*, 548 U.S. 81, 90-92 (2006).

[55] *Porter*, 534 U.S. at 532.

> from raising the defense; or (3) special circumstances, such
> as reasonable misunderstanding of the grievance
> procedure, justify the prisoner's failure to comply with the
> exhaustion requirement.[56]

The Second Circuit has held that "'[a]lert[ing] the prison officials as to the nature

of the wrong for which redress is sought,' . . . does not constitute proper

exhaustion."[57] "[N]otice alone is insufficient because '[t]he benefits of exhaustion

can be realized only if the prison grievance system is given fair opportunity to

consider the grievance' and '[t]he . . . system will not have such an opportunity

unless the grievance complies with the system's critical procedural rules.'"[58]

## C.    Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the

United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another

State . . ."[59] "A state's Eleventh Amendment protection from suit extends to its

---

[56]     *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

[57]     *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quoting *Braham v. Clancy*, 425 F.3d 177, 184 (2d Cir. 2005) and citing *Woodford*, 548 U.S. at 94-95) (finding plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to the MDC's staff").

[58]     *Id.* (quoting *Woodford*, 548 U.S. at 95).

[59]     U.S. Const. amend. XI.

agencies and departments."[60]   "This [Eleventh Amendment] bar remains in effect

when State officials are sued for damages in their official capacity."[61]   To

determine whether the action is an official or individual capacity suit, this Court

must look behind the designation and determine whether "the State is the real,

substantial party in interest."[62]   State agencies are not immune from suits asking

for injunctive relief under the Eleventh Amendment.[63]

### D.   Section 1983

Section 1983 "does not create a federal right or benefit; it simply

provides a mechanism for enforcing a right or benefit established elsewhere."[64]   In

---

[60]   *Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 338 (S.D.N.Y. 2006) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).   *Accord Bryant v. New York State Dep't of Corr. Servs. Albany*, 146 F. Supp. 2d 422 (S.D.N.Y. 2001) (affirming the dismissal of a section 1983 claim against the DOCS and a correctional facility because Eleventh Amendment immunity abrogated the court's subject matter jurisdiction to hear the claim).

[61]   *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted).

[62]   *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled in part by Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002).

[63]   *See, e.g., Perez v. Westchester County Dep't of Corr.*, No. 05 Civ. 8120, 2007 WL 1288579, at *6-8 (S.D.N.Y. Apr. 30, 2007) (considering, but then denying, injunctive relief against a county's department of corrections).

[64]   *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808,

order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[65] "[N]either a State nor its officials acting in their official capacities are 'persons' under [section] 1983."[66] Thus, section 1983 "does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivation of rights secured by the United States Constitution."[67]

Furthermore, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'"[68] Thus, "[a] supervisory official cannot be liable solely on account of the acts or omissions of his or her

816 (1985)).

[65]   See Palmieri v. Lynch, 392 F.3d 73, 78 (2d Cir. 2004) (citation omitted).

[66]   Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Accord Huminski v. Corsones, 396 F.3d 53, 70 (2d Cir. 2005).

[67]   Bryant, 146 F. Supp. 2d at 425.

[68]   Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).

17

subordinates."[69] In 1995, the Second Circuit held that a supervisory official is personally involved only when that official: (1) participates directly in the alleged constitutional violation; (2) fails to remedy the violation after being informed of the violation through a report or appeal; (3) creates or allows the continuation of a policy or custom under which unconstitutional practices occurred; (4) acts with gross negligence in supervising subordinates who commit the wrongful acts; or (5) exhibits deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.[70] However, in 2009, the Supreme Court held, "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution."[71] The Supreme Court explicitly rejected the argument that, "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."[72] Thus, "[a]bsent vicarious

---

[69]     *Ford v. Conway*, No. 03 Civ. 0927S, 2004 WL 1071171, at *4 (W.D.N.Y. Mar. 16, 2004).

[70]     *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).

[71]     *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1948 (2009) (emphasis added).

[72]     *Id.* at 1949.

18

liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[73]  For example,  "[t]he allegation that plaintiff sent defendant[] letters complaining of prison conditions is not enough to allege personal involvement."[74]

### E.    Eighth Amendment Right to be Free from Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.[75]  The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[76]  Because the inadvertent or negligent failure to provide adequate medical care does not rise

---

[73]    *Id.*

[74]    *Laureano v. Pataki*, No. 99 Civ. 10667, 2000 WL 1458807, at *4 (S.D.N.Y. Sept. 29, 2000) (granting a motion to dismiss on similar facts).  *See also Farid v. Goord*, 200 F. Supp. 2d 220, 235 (W.D.N.Y. 2002) (dismissing claims of personal involvement against supervisory official who merely sent grievances "down the chain of command for investigation").

[75]    U.S. Const. amend. XIII.

[76]    *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  *Accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind . . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . .") (quotations and citations omitted).

to the level of deliberate indifference, allegations of medical malpractice or

negligent treatment are insufficient to state a claim under section 1983.[77] "Prison

officials have a duty to provide prisoners with the 'reasonably necessary medical

care which would be available to him or her . . . if not incarcerated.'"[78] However,

a prison cannot be required to meet the same standard of medical care found in

outside hospitals.[79]

    "'The deliberate indifference standard embodies both an objective

and a subjective prong.'"[80] "The objective 'medical need' element measures the

severity of the alleged deprivation, while the subjective 'deliberate indifference'

element ensures that the defendant prison official acted with a sufficiently

---

[77]    *See Estelle*, 429 U.S. at 105-06.

[78]    *Candeleria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *7
(S.D.N.Y. Mar. 1, 1996) (quoting *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir.
1989)). *Accord Edmonds v. Greiner*, No. 99 Civ. 1681, 2002 WL 368446, at *8
(S.D.N.Y. Mar. 7, 2002) ("A person who is incarcerated is entitled to receive
adequate medical care.").

[79]    *See Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir. 1984) ("We have no
doubt that the same standards of medical care cannot be imposed upon a prison as
are presumed to be realized at a hospital.").

[80]    *Morrison v. Mamis*, No. 08 Civ. 4302, 2008 WL 5451639, at *5
(S.D.N.Y. Dec. 18, 2008) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.
1994)).

20

culpable state of mind."[81]  "Because the Eighth Amendment is not a vehicle for

bringing medical malpractice claims, nor a substitute for state tort law, not every

lapse in prison medical care will rise to the level of a constitutional violation."[82]

"[W]hen a prisoner asserts that delay in his treatment constitutes deliberate

indifference on the part of a healthcare provider, the Court looks to the severity of

the consequences brought about by the alleged delay."[83]

### F.    Preliminary and Permanent Injunction

"A plaintiff seeking a preliminary injunction must establish that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the

absence of preliminary relief, that the balance of equities tips in his favor, and that

an injunction is in the public interest."[84]  "A preliminary injunction is an

---

[81]    *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (quoting *Estelle*, 429 U.S. at 104)).

[82]    *Id.* (citing *Estelle*, 429 U.S. 105-06).

[83]    *Pabon v. Goord*, No. 99 Civ. 5869, 2003 WL 1787268, at *11 (S.D.N.Y. Mar. 28, 2003) (citation omitted).

[84]    *Winter v. Natural Res. Def. Council, Inc.*, — U.S. —, 129 S.Ct. 365, 374 (2008). *Accord Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund*, No. 08 Civ. 5520, 2009 WL 1528513, at *1-2 (S.D.N.Y. June 1, 2009) (discussing *Winter* approvingly). *But see Almontaser v. New York City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) ("A party seeking a preliminary injunction 'must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in

extraordinary remedy never awarded as of right."[85] "When the movant seeks a 'mandatory' injunction – that is, as in this case, an injunction that will alter rather than maintain the status quo – [he or] she must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits."[86] The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that a plaintiff seeking a permanent injunction must show actual success on the merits rather than a likelihood of success on the merits.[87]

## IV.   DISCUSSION

Bellamy asserts an Eighth Amendment deliberate indifference claim against Wright and the DOCS.  Defendants respond, first, by asserting Eleventh Amendment immunity with respect to all claims against the DOCS and any claims against Wright in his official capacity.  As for the claim against Wright in his individual capacity, defendants argue that he was not personally involved in the

---

plaintiff's favor.'") (citation omitted).

[85]     *Winter*, 129 S.Ct. at 376 (citation omitted).

[86]     *Mitchell v. New York State Dep't of Corr. Servs.*, No. 06 Civ. 6278, 2009 WL 185757, at *2 (W.D.N.Y. Jan. 26, 2009) (quoting *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008)).

[87]     *See Winter*, 129 S.Ct. at 381.

alleged harm, nor did he create a policy that contributed to that harm.  Bellamy

also seeks a preliminary and permanent injunction against the DOCS to provide

the medical treatment he requests and to comply with several New York State

laws.  Defendants argue that Bellamy will not win on the merits, nor will he suffer

irreparable harm.  Defendants urge this Court to decline to exercise supplemental

jurisdiction over any remaining New York State law claims.  Finally, Bellamy

seeks compensatory and punitive damages.

### A.   Exhaustion of Administrative Remedies

This Court determined in a previous opinion that "Bellamy did not

fail to exhaust his administrative remedies because he was justified in his belief

that no administrative remedy was available to him."[88]  Thus, Bellamy's claims are

not barred by the PLRA.

### B.   Eleventh Amendment Immunity

The Eleventh Amendment immunizes state agencies and state

officials acting in their official capacity from suit under section 1983.

Accordingly, Bellamy's deliberate indifference claims against both the DOCS and

Wright, in his official capacity, are dismissed.

---

[88]  *Bellamy I*, 2008 WL 3152963, at *5 (citing *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004)).

23

## C.     Section 1983 Claim of Deliberate Indifference Against Wright in His Individual Capacity

The Supreme Court's decision in *Iqbal v. Ashcroft* abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*. *Iqbal*'s "active conduct" standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal*'s muster — a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated — situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate.

Bellamy's remaining claim alleges that Wright, in his individual capacity, was deliberately indifferent to Bellamy's medical needs. However, Bellamy offers no evidence that any of Wright's actions fall into any of the remaining exceptions that would permit supervisory liability. *First*, Bellamy admits that Wright was not personally involved in the letter responses. Both parties agree that they have never had any form of contact. *Second*, Bellamy

24

offers no evidence that Wright created or contributed to a policy or custom of unconstitutional practices. Bellamy also admitted that he can provide no evidence that Wright was responsible for making any decisions regarding his testosterone medications.[89] Bellamy's conclusory allegations that Wright must have known about Bellamy's plight is not enough to impute section 1983 liability.[90]

Finally, Bellamy offers no evidence that Wright demonstrated deliberate indifference to Bellamy's serious medical needs. Bellamy does not contend that Wright unnecessarily and wantonly inflicted any pain – indeed Bellamy conceded that Wright was not involved with the alleged denials of treatment. Accordingly, Bellamy's deliberate indifference claim against Wright in his individual capacity is dismissed.

---

[89]     See, e.g., Bellamy Dep. II at 32:19-21 (Question: "Did Dr. Moorjani say anything that Dr. Wright was involved in the April of 2005 denial?" Answer: "No, he did not.")

[90]     See Reid v. Artuz, 984 F. Supp. 191, 195 (S.D.N.Y. 1997) (dismissing an asthmatic prisoner's section 1983 claim against a supervisory official when the pleadings "fail[ed] to allege, let alone establish, any factual basis upon which a fact finder could reasonably conclude personal involvement by the supervisory official defendant. . . that [defendant] created or continued a policy or custom which allowed the violation to occur, or that [defendant] was grossly negligent in managing the subordinates who caused the unlawful condition").

### D.     Preliminary and Permanent Injunction

Bellamy asks this Court to order the DOCS – through an injunction –

to provide him with adequate medical care and to comply with New York State

laws.  This request is denied.

*First*, Bellamy has not alleged that he is suffering irreparable harm.

Instead, he has alleged a number of unrelated and sporadic problems that can be

expected in the normal course of incarceration, especially when transferring from

facility to facility.  It cannot be inferred from his pleadings, his testimony or his

letters to Wright that he has consistently been denied any form of treatment.

Indeed, each of his three letters address completely different topics without re-

addressing prior issues.  Bellamy concedes that the disruption of his medication

only occurred on a very limited or isolated basis.[91]

*Second*, Bellamy cannot show a clear or substantial likelihood of

success on the merits.  Bellamy does not offer evidence that either defendant was

deliberately indifferent to his serious medical needs.[92]  For the objective prong,

---

[91]     *See* Bellamy Dep. II at 56-57, 75-76 (demonstrating that, over the course of three-years, Bellamy was denied treatment for one three-week period, for one allegedly three-month period – while he was transferring facilities – and a few alleged short-term periods, although those dates are unspecified).

[92]     While the DOCS itself is immune from section 1983 liability, the following analysis surrounds the DOCS and its employees generally.

Bellamy offers no evidence that any deprivation of medication was sufficiently serious. Headaches and fatigue do not rise to the level of seriousness necessary to warrant a preliminary injunction – especially when Bellamy admits that he still suffers similar side-effects while receiving the requested treatment.[93] For the subjective prong, Bellamy does not offer any evidence that any DOCS employee acted with the requisite state of mind to be deliberately indifferent to his serious medical needs.

This Court need not address the balance of equities nor the public interest factors because Bellamy has not shown irreparable harm or a substantial likelihood of success on the merits. Accordingly, Bellamy's request for both a preliminary and permanent injunction is denied.

### E.   Supplemental Jurisdiction

Bellamy asks this Court to compel the DOCS – through an injunction – to comply with New York State Public Health Laws.[94] To the extent that there

---

[93]   Further, the defendants' affidavits question many of Bellamy's medical propositions. *See, e.g.*, Moorjani Aff. ¶ 4 (claiming that Bellamy exhibited signs of hypogonadism and many of its symptoms, including weight loss, headaches, and fatigue, prior to the surgery).

[94]   *See* Am. Compl., Prayer for Relief ¶ 18.

are any remaining state law claims, this Court declines to exercise supplemental jurisdiction over those claims.[95]

## V.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.  The Clerk of the Court is directed to close this motion (Docket # 64) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              June 26, 2009

---

[95]        *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."). *See also Kshel Realty Corp. v. City of New York*, No. 01 Civ. 9039, 2006 WL 2506389, at *13 (S.D.N.Y. Aug. 30 2006) ("[T]he Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of on 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'") (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

## -Appearances-

**Plaintiff (Pro se):**

Jerome Bellamy
# 95-A-3879
Wende Correctional Facility
Wende Road
P.O. Box 1187
Alden, New York 14004-1187

**For Defendants:**

Julinda Dawkins
Assistant Attorney General
120 Broadway
New York, New York 10271-0332
(212) 416-8610